IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS JOSEPH GUILLON,<br><br>Plaintiff,<br><br>v.<br><br>AMCO INSURANCE COMPANY,<br><br>Defendant. | Case No. 20-cv-07926-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE** |

Crush Steakhouse-Ukaih, Inc. (Crush) contracts with AMCO Insurance Company (AMCO) for liability insurance. In 2018, three former Crush employees sued Crush, various Crush employees, and Crush Chief Executive Officer and Director Douglas Joseph Guillon. AMCO did not defend Guillon or Crush in the action and denied coverage for any damages arising from it. Guillon is now suing AMCO for breach of contract and requests damages for all costs related to the underlying action. AMCO has moved to dismiss. The Court GRANTS AMCO's motion to dismiss for failure to state a claim for which relief may be granted because the insurance policy gives AMCO no duty relating to the underlying suit. The Court determines that there is no need for oral argument.

**I.     BACKGROUND**

   **A.     The Underlying Action**

In 2018, former employees of Crush sued Crush, Guillon, and other Crush employees. See Lacey Berry, Sierra Butler, and Morgan Lawler v. Crush Steakhouse-Ukiah, Inc., a business entity; Nicholas Karavas, a.k.a. Nick Karavas, an individual;

Douglas Joseph Guillon, an individual; and Does 2-20 (Underlying Action) (dkt. 1, Ex. 2).[1]

Plaintiffs in the Underlying Action (Underlying Plaintiffs) asserted various federal and California employment law causes of action, alleging sexual harassment, retaliation, and wrongful termination. Id. at 8-27. Underlying Plaintiffs also sued all Underlying Defendants for battery. Id. at 15. As owner of Crush, Guillon employed all Underlying Plaintiffs at the time of the conduct giving rise to Underlying Plaintiffs' claims. Id. at 3; see Compl. ¶ 5 (dkt. 1, Attach. A). While much of the alleged conduct occurred inside the workplace, some alleged instances of harassment took place at other locations. See Underlying Action at 8-27. For example, Underlying Plaintiff Lacey Berry alleged that Underlying Defendant Nicholas Karavas "insisted on [Berry] attending non-work related social events" with him. Underlying Action, Attach. A at 8. On one occasion, Berry alleged that Karavas "demanded" that Berry "dress up" and accompany him to a "winemakers dinner" at Crush when she was not scheduled to work. Id. She was not paid to accompany him as an employee. Id. Additionally, Berry alleged that Karavas "showed up" at her hotel outside of work hours and without her consent. Id.

After receiving notice of the Underlying Action, Guillon requested coverage for the suit through Crush's AMCO Premier Businessowners Liability Policy. Compl. ¶ 12.

### B. The Insurance Policy

The language relevant to this dispute is located in the Premier Businessowners Liability Coverage Form in Crush and AMCO's insurance agreement (Agreement). See Agreement, Compl. Ex. 1 (dkt. 1). The Agreement contains two potential bases for coverage—Coverage A and Coverage B. See id.

Coverage A states:
> [AMCO] will pay those sums that [Crush] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [AMCO] will have the right and duty to defend [Crush] against any "suit" seeking those damages. However, [AMCO] will have no duty to defend [Crush] against any "suit" seeking damages for "bodily injury"

---

[1] The Underlying Action was filed in the superior court of the State of California, County of Mendocino under Case No. SCUK CVPT-17-70022. See Underlying Action.

or "property damage" to which this insurance does not apply.

Agreement at 35. Coverage A specifies that the "insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'"[2] Id. The Agreement defines "[o]ccurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 49.

Coverage B states that AMCO is "legally obligated to pay" any damages arising from "personal and advertising injury." Id. at 40. The Agreement defines "personal and advertising injury" as injuries arising out of a list of seven enumerated examples, including "false arrest, detention or imprisonment" and "oral or written publication, in any manner, of material that violates a person's right to privacy." Id. at 49.

Both Coverage A and Coverage B are subject to an Employment Related Practice Exclusion. See id. at 53. This exclusion states that AMCO has no duty to defend suits alleging bodily injury or personal and advertising injury arising from "(a) Refusal to employ that person; (b) Termination of that person's employment; or (c) Employment-related practices, policies, acts, or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or malicious prosecution directed at that person." Id.

### C.   AMCO's Denial of Coverage

On August 29, 2019, AMCO notified Guillon that it "had no obligation to defend or indemnify" him or Crush. Compl. ¶ 12; Letter, Compl. Ex. 3 at 222 (dkt. 1). First, AMCO stated that Coverage B did not apply because none of the alleged injuries in the Underlying Action constituted personal and advertising injury. Letter at 227. Second, AMCO asserted that Coverage A did not apply because none of the alleged injuries in the Underlying Action were caused by "occurrences," and thus none constituted bodily injury or property damage. Id. at 230. Third, AMCO informed Guillon that the Employment Related

---

[2] The Agreement defines "Bodily Injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." Agreement at 47.

3

Practice Exclusion applied to the Underlying Action. Id. at 231-32

### D. Procedural History

Guillon sued AMCO in the Superior Court of the State of California for breach of contract, breach of the covenant of fair dealing, and elder abuse. Compl. ¶¶ 25-27, 29-33, 35-41. On November 20, 2020, AMCO removed the case to this Court.[3] On November 27, 2020, AMCO moved to dismiss for failure to state a claim for which relief may be granted. See generally Mot. to Dismiss (dkt 12).

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 927 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322

---

[3] The Court has jurisdiction over this suit because the parties are residents of different states and Guillon seeks more than $75,000 in damages. See Notice of Removal at 2-3 (dkt. 1); 28 U.S.C. §§ 1332(a), 1446.

1  (2007).

2      When dismissing a case under Rule 12(b)(6), courts generally must give leave to
3  amend unless it is "determined that the pleading could not be cured by the allegation of
4  other facts" and therefore the amendment would be futile. Cook, Perkiss & Leihe, Inc. v.
5  N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).

6  **III.  DISCUSSION**

7      An insurer owes a duty to defend when a suit brought against its insured seeks
8  damages that potentially fall within the coverage of the policy. Waller v. Truck Ins. Exch.,
9  Inc., 11 Cal. 4th 1, 19 (1995). "Where there is no possibility of coverage, there is no duty
10 to defend." Id. (internal quotation marks omitted). "To prevail, the insured must prove the
11 existence of a potential for coverage, while the insurer must establish the absence of any
12 such potential." Montrose Chem. Corp. of Cal. v. Super. Ct., 6 Cal. 4th 287, 300 (1993)
13 (emphasis in original). To determine whether an insurer owes a duty to defend, a court
14 must "compar[e] the allegations of the complaint with the terms of the policy." Id. at 295.
15 Because California is the forum state in this diversity action, California law governs the
16 Court's interpretation of the Agreement. See Encompass Ins. Co. v. Coast Nat'l Ins. Co.,
17 764 F.3d 981, 984 (9th Cir. 2014); Bell Lavalin Inc. v. Simcoe & Erie Gen. Ins. Co., 61
18 F.3d 742, 745 (9th Cir. 1995). Under California law, "[i]nterpretation of an insurance
19 policy is a question of law and follows the general rules of contract interpretation."
20 MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 647 (2003), as modified on denial of
21 reh'g (Sept. 17, 2003).

22     AMCO argues that Guillon's Complaint should be dismissed with prejudice
23 because the injuries alleged in the Underlying Action are not covered by Coverage A or B.
24 See Mot. to Dismiss at 2. Additionally, AMCO claims that the alleged injuries fall under
25 the Employment Related Practice Exclusion. See id. Guillon contends that the alleged
26 conduct in the Underlying Action falls within the Agreement and therefore AMCO had a
27 duty to defend and cover damages arising from the suit. Compl. ¶ 24. Guillon argues that
28 the Underlying Action attempted to hold him vicariously liable for battery, making at least

5

that injury an "occurrence" under the Agreement. See Opp. to Mot. to Dismiss at 12 (dkt. 13). Further, Guillon argues that because some of the alleged conduct took place outside the workplace, the Employment Related Practice Exclusion does not apply. See id. at 13-14.

The Court GRANTS the motion to dismiss because: (1) the Employment Related Practice Exclusion relieves AMCO from any duty to defend; (2) the alleged actions are not covered by Coverage A; and (3) the alleged actions are not covered by Coverage B.

### A.     Employment Related Practices Exclusion

AMCO argues that it did not breach the Agreement because the Underlying Action arose from employment related practices. See Mot. to Dismiss at 2. As discussed above, the Employment Related Practices Exclusion states that employment related practices include "coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person." Agreement at 53. AMCO is correct that the allegations in the Underlying Action fit within this exclusion.

Underlying Plaintiffs claimed that the conduct of Guillon and other Underlying Defendants "constituted discrimination" under applicable employment law, and that this discrimination consisted of "wrongful termination, sexual harassment, retaliation, unequal pay, [and] less desirable scheduling and shifts, all due to their gender." Underlying Action at 8. For example, Underlying Plaintiff Berry alleged that Karavas "would have inappropriate and non-consensual physical contact with her." Id. at 4. When Berry "did not comply with the harassment," Karavas retaliated by "reducing her financial compensation" or disciplining her on "pretextual grounds." Id. These alleged actions constitute employment practices involving "coercion, demotion . . . harassment, [and] humiliation . . ." under the Employment Related Practices Exclusion. Agreement at 53.

Guillon incorrectly argues that the exclusion does not apply because some of the alleged conduct happened outside the workplace. See Opp. to Mot. to Dismiss at 9-10; Agreement at 53. An employment-related practice can occur outside the workplace. A

1  two-factor test introduced by the California Supreme Court in <u>Low v. Golden Eagle Ins.</u>
2  <u>Co.</u> determines if conduct is within the scope of an employment-related practices exclusion
3  like the one at issue here.  <u>See</u> 104 Cal. App. 4th 306 (2002).  <u>Low</u> held that courts should
4  examine "(1) the nexus between the allegedly defamatory statement (or other tort) at issue
5  and the third party plaintiff's employment by the insured, and (2) the existence (or
6  nonexistence) of a relationship between the employer and the third party plaintiff <u>outside</u>
7  the employment relationship."  <u>Id.</u> at 428-29 (emphasis in original).

8        Here, the nexus between the Underlying Defendants' alleged conduct and the
9  Underlying Plaintiffs' employment is straightforward.  There is no dispute that all parties
10 in the Underlying Action were employed by Crush.  <u>See</u> Underlying Action at 3; Mot. to
11 Dismiss at 7.  Underlying Plaintiffs asserted that Karavas and others used their positions as
12 supervisors to engage in "inappropriate and non-consensual physical contact" inside and
13 outside the workplace, and that instances outside the workplace were part of a "series of
14 continuing and related" employment law violations.  Underlying Action at 12; Underlying
15 Action, Attach. A at 8.  The conduct that occurred outside the workplace stemmed from
16 the employment relationship, and there is no indication that the Underlying Plaintiffs and
17 Underlying Defendants had relationships besides employment relationships.  <u>See generally</u>
18 Compl.; Mot. to Dismiss at 16-17.  For instance, Underlying Plaintiffs alleged that Karavas
19 used his relationship as a supervisor to pressure Berry into attending non-work related
20 functions and to make "sexual comments" towards her.  Underlying Action, Attach. A at
21 8-9.  Berry alleged that if she did not comply with Karavas's requests, both inside and
22 outside the workplace, Karavas would retaliate through her employment at Crush by
23 reducing her shifts and otherwise disciplining her.  <u>Id.</u>  Therefore, the conduct alleged is
24 covered by the Employment Related Practices Exclusion.

25       Because all alleged conduct in the Underlying Action falls under this coverage
26 exclusion, Guillon has failed to establish any potential coverage from the Agreement and
27 has thus failed to state a claim for breach of contract.

28

### B. Coverage A

Even if the Employment Related Practices Exclusion did not apply, the Underlying Action would not be covered by Coverage A. As discussed above, Coverage A pertains to "Bodily Injury" and "Property Damage," and states that there is a duty to defend the insured for "bodily injury" only if such injury is "caused by an 'occurrence.'" Agreement at 35. The Agreement defines "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 47. Guillon has failed to show that the claims in the Underlying Action, including the battery claim, could have resulted from "occurrences" because the alleged conduct was intentional. Guillon's argument that his vicarious liability for battery could arise from an "occurrence" is meritless.

#### 1. Alleged Actions of Other Defendants are not "Occurrences"

The Underlying Action's allegations involving supervisors, including Karavas, do not describe "occurrences." When insurance policies expressly define a term, that definition governs. See Rosen v. State Farm General Ins. Co., 30 Cal. 4th 1070, 1074 (2003). Here, the policy defines "occurrence" as an accident. Agreement at 47. There is no dispute that the underlying complaint alleged wrongdoing that was intentional and malicious. See Underlying Action at 15; see generally Compl. Intentional conduct is no accident, so the conduct at issue in the Underlying Action does not constitute an "occurrence" under Coverage A.

#### 2. Battery is not a Covered Occurrence

Guillon's argument that the alleged battery in the Underlying Action could be an "occurrence" also fails. See Opp. to Mot. to Dismiss at 13. Underlying Plaintiffs alleged one count of battery against all Underlying Defendants, including Guillon. See Underlying Action at 15. Guillon argues that because the allegations indicate that only Karavas engaged in conduct constituting battery, there could be no "direct, actual, and intentional conduct that would constitute a battery on [Guillon's] part." Compl. ¶ 10. He argues that the Underlying Plaintiffs were instead attempting to hold Guillon vicariously liable for the

8

battery, creating "at least a potential" for an occurrence covered by the Agreement. Opp. to Mot. to Dismiss at 13 (emphasis in original). But Underlying Plaintiffs did not attempt to hold Guillon vicariously liable, and even if they did, it could not transform the alleged battery into an "occurrence."

First, Underlying Plaintiffs alleged that Guillon committed an intentional tort. Underlying Action at 15. Underlying Plaintiffs alleged that "defendants committed the [battery] acts herein alleged despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs." Id. (emphasis added). Underlying Plaintiffs used the plural "defendants" to allege intentional acts by all Underlying Defendants, including Guillon. Id.

Second, even if Underlying Plaintiffs attempted to hold Guillon vicariously liable, that would not mean they were asserting liability for an "occurrence." Guillon attempts to use Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co. to support his argument that vicarious liability could be an "occurrence." See Opp. to Mot. to Dismiss at 11-12 (citing 5 Cal. 5th 216 (2018)). Ledesma & Meyer held that an employer who faces claims of "negligent hiring, retention, or supervision whenever the employee's conduct is deliberate" may, in certain circumstances, be entitled to coverage under insurance policies that cover bodily injuries caused by "occurrence[s]," when an "occurrence" means "an accident." 5 Cal. 5th at 220, 229. However, Underlying Plaintiffs brought no claims analogous to negligent hiring, retention, or supervision against Guillon. See generally Underlying Action. Indeed, Ledesma & Meyer distinguished between underlying claims for negligent hiring, retention, or supervision (i.e., direct negligence) and claims asserting that an employer "is merely vicarious[ly]" liable. 5 Cal. 5th at 222 (quoting Minkler v. Safeco Ins. Co. of Am. 49 Cal. 4th 315, 325 (2010) (emphasis in original)). Therefore, Ledesma & Meyer does not support Guillon's argument that Coverage A applies to the alleged injuries.

### C.     Coverage B

Similarly, even if the Employment Related Practices Exclusion did not apply to this

action, the Underlying Action would not be covered by Coverage B. Guillon's Complaint asserts coverage under Coverage B but does not state with particularity how any alleged injury in the Underlying Action could constitute personal and advertising injury. See generally Compl. Additionally, while Guillon recites the language of Coverage B in his opposition to AMCO's motion to dismiss, he never explains why Coverage B is applicable to the Underlying Action and never attempts to define any of the alleged injuries as personal or advertising injuries. See generally Opp. to Mot. to Dismiss. Thus, Guillon has forfeited any argument that Coverage B applies.

### D. Dismissal with Prejudice

Guillon has failed to show any potential for coverage under the policy, so his breach of contract claim fails. Because Guillon's additional claims are "inextricably tied" to his breach of contract claim, see Opp. to Mot. to Dismiss at 16, they also fail. Based on the plain language of the Agreement and the allegations in the Underlying Action, any amendment to Guillon's Complaint would be futile. See Cook, Perkiss & Leihe, Inc., 911 F.2d at 246-47. Therefore, the Court declines to give Guillon leave to amend.

## IV. CONCLUSION

For the foregoing reasons, The Court **GRANTS** AMCO's motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: January 26, 2021

_____
CHARLES R. BREYER
United States District Judge